(6 Misc. Rep. 290.)

### MARKS v. JAFFA.

(Superior Court of New York City, Special Term. December, 1893.)

INJUNCTION—PUBLISHING PICTURE IN NEWSPAPER.
> Injunction will lie against the publication of a picture of plaintiff in defendant's newspaper, with an invitation to readers of the paper to vote on the question of the popularity of plaintiff as compared with another person, whose picture is also published in such paper.

Action by Rudolph Marks against Joseph Jaffa to restrain the publication by defendant of a picture of plaintiff in a newspaper, of which defendant is editor. Plaintiff moves to continue the injunction. Granted.

M. J. Gretsch, for the motion.
A. H. Sarasohn, opposed.

McADAM, J. The plaintiff, an actor by profession, is now undergoing a course of studies in the law school of the university

preparatory to admission to the bar. There is another actor by the name of Mogulesko, equally well known as the plaintiff. The defendant is the editor of a newspaper called "Der Wachter," published in this city, and extensively patronized. The defendant devised a scheme by which he was to publish in his paper a picture of the two actors, with an invitation to the readers of his journal to vote with the view to determining who was the more popular of the two. The plaintiff declined to give consent to the use of his name or picture for any such purpose, and protested against any such use thereof; notwithstanding which, the defendant went on with the publication, and published the two pictures, and invited the contest aforesaid, and has threatened to continue the same. The bill was filed to enjoin future publications.

The action may seem novel, but there can be no question about the plaintiff's right to relief, irrespective of the amount of damages he might recover at law. Schuyler v. Curtis, (Sup.) 15 N. Y. Supp. 787, affirmed 64 Hun, 594, 19 N. Y. Supp. 264. If a person can be compelled to submit to have his name and profile put up in this manner for public criticism to test his popularity with certain people, he could be required to submit to the same test as to his honesty or morality, or any other virtue or vice he was supposed to possess; and the victim selected would either have to vindicate his character in regard to the virtue or vice selected, or be declared inferior to his competitor,—a comparison which might prove most odious. Indeed, he might be placed in competition with a person whose association might be peculiarly offensive, as well as detrimental, to him. Such a wrong is not without its remedy. No newspaper or institution, no matter how worthy, has the right to use the name or picture of any one for such a purpose without his consent. An individual is entitled to protection in person as well as property, and now the right to life has come to mean the privilege to enjoy life without the publicity or annoyance of a lottery contest waged without authority, on the result of which is made to depend, in public estimation at least, the worth of private character or value of ability. See 4 Harv. Law Rev. 193; Scrib. Mag. July, 1890, pp. 65, 67. Games of chance have always been discountenanced by the law, and, when they are used as the pretended means of testing private character or ability, they become impositions on the public, and frauds upon the individuals affected. The courts will, in such cases, secure to the individual what has been aptly termed the right "to be let alone." The law affords a remedy for the unauthorized circulation of portraits of private persons; and the principle has even been extended to an actress whose picture was taken surreptitiously, and without her consent, by means of a flash light. Vide supra. Private rights must be respected, as well as the wishes and sensibilities of people. When they transgress the law, invoke its aid, or put themselves up as candidates for public favor, they warrant criticism, and ought not to complain of it; but, where they are content with the privacy of their homes, they are entitled to peace of mind, and cannot be suspended over the press-heated gridiron of excited rivalry, and

voted for, against their will and protest. The right of the plaintiff to relief seems too clear, both upon principle and authority, to require further discussion. The motion to continue the injunction must be granted.